Larry Charbert HAYES,
Plaintiff–Appellant,

v.

James R. THOMPSON * et al.,
Defendants–Appellees.

No. 79–2347.

United States Court of Appeals,
Seventh Circuit.

Argued May 5, 1980.
Decided Dec. 18, 1980.

* We substitute the name James R. Thompson, the successor to the original defendant Dan Walker as Governor of the State of Illinois, per Fed.R.App.P. 43.

Terri Rose Saunders, Jenner & Block, Chicago, Ill., for plaintiff–appellant.

** Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Gerri Papushkewych, Springfield, Ill., for defendants–appellees.

Before SWYGERT and SPRECHER, Circuit Judges, and EAST,** District Judge.

EAST, District Judge.

Hayes appeals from a final judgment on the merits entered against him by the District Court on October 11, 1979 following trial on his § 1983 civil rights action upon a remand from this Court. *Hayes v. Walker*, 555 F.2d 625 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (*Hayes I*). Hayes was a prisoner who alleged various procedural deficiencies in prison disciplinary proceedings brought against him. Our jurisdiction to review is found at 28 U.S.C. § 1291. We are satisfied that the District Court improperly applied the holding of our prior review of this case in *Hayes I*, and we now affirm in part, reverse in part, and remand with instructions.

## I. BACKGROUND FACTS

### A. Prison Action

Hayes was a prisoner at the Sheridan Correctional Center on May 12, 1975. He had been a prisoner for six years, and had rendered much assistance to other prisoners in drafting grievances, many of which were successful. On May 12, 1975, there was a gathering of prisoners in the prison yard at about 6:00 P.M. during the normal exercise period. This group of about 50 prisoners, apparently led by Hayes, discussed grievances and grievance procedures. Hayes responded to almost every question with an exhortation to "write Springfield," and emphasized the grievance procedures, noting that there were a number of "legal buffs" with typewriters who would assist prisoners. In answer to one question as to what they would do if no action was forthcoming within six months, he replied "You know

what we'll do." Three security guards, who had been watching the gathering for most of its duration, dispersed the meeting at approximately 7:30 P.M.

At about midnight that night, Hayes was awakened by security guards, strip–searched, and placed in isolation. The next day he received a copy of a violation report written by the warden, Wolff, based upon reports of the officers at the meeting, charging Hayes with conspiracy to incite to riot and commit mutinous acts.

On May 14, Hayes appeared before the Institutional Adjustment Committee which considered the report filed against him. He presented several motions, including a request that the Committee call approximately 50 witnesses (prisoners who were present at the yard meeting) in his defense. The Committee took all of the motions under advisement and continued the committee meeting until the 15th.

On May 15, Hayes (on his own initiative) reduced his list of requested witnesses to ten. The Committee denied his request for witnesses in total stating the following reason:

"The residents requested would be placed in highly compromising positions with regards to possible retribution from other residents and to call resident witnesses could prove hazardous to both witnesses and institutional security."

Hayes then requested a continuance to obtain affidavits from residents who had attended the group meeting. This was also denied by the Committee, stating that since the administrative regulations did not require sworn affidavits, there was insufficient reason to stay the proceedings.

The Committee then proceeded to find Hayes guilty as charged, based "on the violation report as written and upon the report by the special investigator." This investigator's report was written by a special investigator from the Department of Corrections called in by the Warden the day after the group meeting. The investigator had interviewed Hayes and the other residents charged with conspiracy, and had reported by telephone to the members of the Com-

mittee. The Committee ordered that Hayes be kept in segregation for at least ten days, and it further recommended that he forfeit nine months' statutory good time, that he be transferred from Sheridan, and that he be demoted from "A" to "C" grade.

### B. *Proceedings in District Court*

Hayes brought this action in District Court under 42 U.S.C. § 1983, claiming that the refusal to call witnesses and the guilty finding violated his due process and First Amendment rights as well as the prison's regulations. He sought declaratory and injunctive relief, compensatory and punitive damages, and the expunction of the violation from his prison record. The District Court dismissed for failure to state a claim upon which relief could be granted. This Court reversed, *Hayes v. Walker*, 555 F.2d 625 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (*Hayes I*), and remanded for trial with instructions.

At the trial upon remand, the members of the Committee testified to their understanding of the relevant procedural requirements and to why they reached the decisions they did with regard to Hayes' case. On October 11, 1979, the District Court entered judgment for the defendants and against Hayes on all issues, adopting verbatim the defendants' proposed findings of fact and conclusions of law. Hayes appeals from this final judgment. Our jurisdiction is based upon 28 U.S.C. § 1291.

### II. *HAYES I*

■ In May of 1977, in *Hayes I*, we remanded this case to the District Court for trial after ruling that the action should not have been dismissed for failure to state a claim. The District Court was instructed to inquire whether the record indicated an abuse of discretion by the Committee in refusing to call any of Hayes' witnesses or to allow affidavits to be prepared. This Court also found that the Committee acted wrongly in merely adopting the contents of the reports as the basis for finding Hayes guilty. We found that it was a violation of

their own administrative regulations, and "did not meet the minimum due process requirements as set forth in *Wolff* [*v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)]." Further, this Court ruled that on a liberal reading of the complaint there was bad faith alleged regarding the segregation without notice and hearing, and if this could be proved, there would be a claim upon which relief could be granted. Finally, this Court did not discuss the First Amendment claim nor the question of substantive evidence supporting the guilty finding. The case was remanded to the District Court for further inquiry. The present appeal arises from the result of that trial.

In *Hayes I*, we had occasion to review with some particularity the facts and applicable law concerning Hayes' request for witnesses and his guilty finding. Those portions of *Hayes I* constitute this Court's statement of the relevant law, as well as being the law of the case, *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574 (7th Cir. 1978), and are central to our review of the judgment here appealed. Consequently, we will make reference to *Hayes I* throughout this disposition, and find it appropriate to preface our consideration of Hayes' specific complaints with a review of our holding in that decision.

A. *Denial of Witnesses (555 F.2d at 628–30)*

In *Hayes I*, we held that the District Court erroneously dismissed the witness denial portion of Hayes' complaint because the record then before the Court did not permit "even limited review" of the Committee's decision:

"The record now before this Court does not permit even limited review of the Institutional Adjustment Committee's exercise of discretion. The Institutional Adjustment Committee offered in justification of its action only broad conclusory findings of possible hazard both to potential witnesses and to institutional security which applied to all of the proposed witnesses on plaintiff's list. There is no indication in the record that the Institutional Adjustment Committee examined each proposed witness for the relative benefit or danger in his testimony. Similarly, this court cannot determine whether the broad conclusion applicable to all of the witnesses was improper as to individual witnesses. Since the record is barren of support for these broad conclusions, we find that the case must be returned to the district court for a determination of whether the Institutional Adjustment Committee's decision was a proper exercise of discretion.

"We are not requiring that a statement of reasons be given to support the denial of a request for witnesses. We hold only that some support for the denial of a request for witnesses appear in the record." 555 F.2d at 630.

Our discussion emphasized the meaninglessness of judicial review if such "broad unsupported findings" were allowed to uphold disciplinary convictions. Our remand on this issue was to permit the prison authorities to introduce portions of the Committee's hearing record which may have been previously unavailable, and which would then allow a court to exercise its review function over the Committee's action.

We also held in *Hayes I* that the Committee did not comply with applicable regulations when it failed to consider each proposed witness individually.[1]

B. *Statement of Reasons for Disciplinary Action (555 F.2d at 631–33)*

Upon reviewing the Committee's statement of reasons for finding Hayes guilty as

---

1. State of Illinois, Department of Corrections, Regulation No. 804(II)(B)(6) provides in part:
 "The resident shall be allowed to call witnesses and obtain documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and will not extend the hearing beyond all reasonable limits. *The committee will state its reasons for refusing to call or interview a witness, whether it be for irrelevance, lack of necessity or the hazards presented in the individual cases.*" (Emphasis added).

charged,[2] we held first that it, too, violated applicable regulations in that it merely adopted the violation report and the report of the special investigator.[3] Second, we held that the Committee did not meet minimum due process requirements as set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), because it failed to "give an adequate statement as to the evidence relied on or reasons for the action taken." Thus, we held that the District Court erred in dismissing that portion of the Hayes complaint.

## C. Other Issues

In *Hayes I*, we also found that Hayes' complaint could be read to allege bad faith on the part of the Warden in placing Hayes in segregation, thus precluding the dismissal of that portion of the complaint. We chose not to express an opinion on the allegation that there was insufficient evidence to support the guilty finding, or on Hayes' First Amendment issues.

## D. Effect

Our holdings in *Hayes I* constitute the law of this case and are binding in further action before bodies subject to our authority. *Briggs v. Pennsylvania R. R.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948). Such bodies are " 'without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of [the] court deciding the case.' " *Yablonski v. UMW*, 454 F.2d 1036, 1038 (D.C.Cir.1971), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972), *quoting Thornton v. Carter*, 109 F.2d 316, 320 (8th Cir. 1940). Thus, the District Court on remand was bound to follow in "letter and spirit" our enumerations of law set out in *Hayes I*. *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d at 577; *City of Cleveland v. FPC*, 561 F.2d 344, 346 (D.C.Cir.1977).

## III. DENIAL OF WITNESSES

■ We will not set out again at length the principles governing a prisoner's limited right to call witnesses in his defense at prison disciplinary proceedings. We affirm our discussion in *Hayes I* in which we acknowledged this limited right but recognized that prison officials' discretion with respect to witnesses was not unbounded. We emphasized the necessity of some sup-

---

**2.** The Committee held as follows:

"Based on our review of the violation report and the report by the special investigator it is our motion that we find Mr. Hayes guilty as charged. We find that Mr. Hayes is guilty of conspiracy to incite to riot and commit mutinous acts. All Committee members concurred that Mr. Hayes be moved to the Segregation Unit, that his status be reviewed within 10 days, that he be referred to the Institutional Assignment Committee and recommendation of transfer [*sic*] and to Administrative Review by the Administrator of Institution Services further recommend [*sic*] that Mr. Hayes be demoted to "C" grade and that 9 months statutory good time be revoked from the minimum sentence. All members concurred.

"It is therefore the unanimous decision of the Committee that Mr. Hayes is guilty of conspiracy to incite to riot and commit mutinous acts. That Mr. Hayes be moved to the Segregation Unit, his status to be reviewed within 10 days, that he be referred to the Institutional Assignment Committee with recommendation for transfer and to Administrative Review by the Administrator of Institution Services. Further recommend that Mr. Hayes be demoted to "C" grade and that 9 months statutory good time be revoked from the minimum sentence."

**3.** State of Illinois, Department of Corrections, Administrative Regulation No. 804(II)(B)(9) provides:

"The resident must be given a written statement, signed by the Chairman, of the evidence relied upon by the majority of the committee and the specific disciplinary action taken, as well as the reasons for disciplinary action. If personal or institutional safety is involved, this statement may properly exclude certain items of evidence, but the statement should then indicate the fact of the omission. The statement of decision should include, wherever appropriate, a short explanation of why information purporting to exonerate the resident was discounted, if it was discounted. *It will not be sufficient for the committee's decision to simply adopt and copy the exact wording of the Resident Information Report.* The resident's copy of the committee's statement of decision must be given to him either immediately after the hearing or within 10 hours after the decision is made." (Emphasis added).

port in the record for a decision not to call witnesses in order that there may be meaningful judicial review so as to insure that a prisoner is protected from arbitrary government action.

As noted above, our holding in *Hayes I* directed the District Court to examine the Institutional Adjustment Committee's administrative record seeking support for the decision not to call witnesses. Although we held the record as presented insufficient to permit meaningful judicial review, our remand gave the defendants the opportunity to introduce any portions of the administrative record not before us in *Hayes I*. However, our opinion held that support must appear *in the record*, and we directed the action reinstated to determine if the complete record justified the Committee's exercise of discretion.

At trial, the Court heard testimony from the Warden and the members of the Committee, as well as from Hayes and from another prisoner. The Committee members testified to their basis for reaching their decision on Hayes' request for witnesses, their backgrounds and experience in prison matters, their impressions of the situation at Sheridan at the time of the Hayes hearing, and their familiarity with and understanding of the applicable prison regulations and the Supreme Court's then recent decision on prison disciplinary proceedings (*Wolff v. McDonnell*). This testimony apparently formed the basis for the Court's decision that the Committee's denial of Hayes' request for witnesses was a proper exercise of discretion.

Although it may be relevant to other issues in this case, it is clear that under *Hayes I* this subsequent testimony may not be considered in reviewing the Committee's decision. The requirement of support in the administrative record is central to the effectiveness of judicial review in insuring that a prisoner has not been subjected to arbitrary action by prison officials. If sub-

sequent testimony is allowed to substitute for support in the record, the Court can no longer assure itself that the Committee made a reasoned, well-founded decision. Such post-hoc rationalizations are to be viewed with suspicion, and are not a proper basis for meaningful judicial review. Support *in the administrative record* is necessary to protect the prisoner from arbitrary official action, and is a minimum requirement of due process.[4]

Moreover, an adequate record is essential from the inmate's perspective as well. If judicial review is to be knowledgeably sought by a prisoner, he must be able to discern when error has been committed and review might be successfully pursued. The administrative record provides the prisoner's source for knowing the basis for a disciplinary decision, and allows him to contest erroneous or insufficient support. If subsequent testimony were permitted to constitute the necessary support for disciplinary action, it would produce the anomalous result of requiring a prisoner to initiate and bring to trial a civil rights action in order to discover what underlay the decision.

■ Here, there were no new portions of the administrative record introduced at trial. We must, therefore, presume that the record which was before us in *Hayes I* is the complete record of the Committee's action in Hayes' case, and is the record upon which the Committee's decision must be reviewed. That record stands today as barren of support for the Committee's denial of witnesses as it did in 1977. An insufficient record does not mature and improve with age. In *Hayes I* at 630, we held: "The record now before this Court does not permit even limited review of the Institutional Adjustment Committee's exercise of discretion." This is still true today. The broad conclusory findings of the Committee are not adequate to allow judicial review. We reassert our holding that the Committee's

---

4. As we stated in *Hayes I*, by requiring support in the record, we are not requiring a statement of reasons for the denial of witnesses. *See Wolff v. McDonnell*, 418 U.S. at 566, 94 S.Ct. at 2979–2980. We only decide that due process

requires that there be some support in the record to justify the Committee's denial of a prisoner's request for witnesses. *Hayes I* at 630.

record in Hayes' case is inadequate to support its decision to deny Hayes' request for witnesses. Therefore, we must conclude that the denial constitutes an abridgement of Hayes' due process rights.

Not only is the Committee's denial a violation of due process, but it also failed to conform to the applicable regulations. As we noted in *Hayes I*, the Illinois Department of Corrections regulations required the Committee to consider each proposed witness individually. Because no further portions of the record have been revealed on remand, and thus no indication that the proposed witnesses were individually considered, we must also conclude that the Committee acted in violation of applicable regulations.

For the foregoing reasons, we find that the District Court erred in finding that the Committee's denial of Hayes' request for witnesses satisfied due process.

## IV. *STATEMENT OF REASONS FOR DISCIPLINARY ACTION*

■ We will not repeat here our discussion in *Hayes I* of the necessity for reasons to be stated underlying prison disciplinary action. *See Hayes I* at 631–33. For much the same purpose discussed in Part III above, it is essential that such reasons appear in the record of the proceedings. It is not adequate to review the Committee's guilty finding on the basis of subsequent testimony.

In *Hayes I*, we reviewed the Committee's statement of reasons for its finding that Hayes was guilty of "conspiracy to incite to riot and commit mutinous acts." On the basis of the record before us there, we concluded:

"The Institutional Adjustment Committee failed in the present case to give an adequate statement as to evidence relied on or reasons for the action taken. Rather than pointing out the essential facts upon which inferences were based, the Committee merely incorporated the violation report and the special investigator's report. This general finding does not ensure that prison officials will act fairly.

Nor will this finding protect against subsequent collateral effects based on misunderstanding of the initial decision." *Hayes I*, 555 F.2d at 633.

We have before us now the same record which we reviewed there. We must, therefore, conclude that the statement of reasons is not adequate and the guilty finding must be reversed as a violation of due process.

## V. *IMMUNITY OF THE PRISON OFFICIALS*

Hayes has requested that both compensatory and punitive damages be awarded as partial relief for the prison officials' violation of his constitutional rights. The officials respond that even if Hayes' rights were violated, they acted in the good faith belief that their actions conformed to all applicable requirements and they are thus immune from damages under a qualified good-faith immunity. The District Court held that the officials were indeed entitled to immunity and could not be liable for damages. We agree with the District Court's result.

■ The Supreme Court has recognized a qualified good–faith immunity for state prison officials acting within the scope of their official responsibilities when damages are sought for constitutional violations under 42 U.S.C. § 1983. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). *Accord, Knell v. Bensinger*, 522 F.2d 720 (7th Cir. 1975). *Cf. Chapman v. Pickett*, 586 F.2d 22 (7th Cir. 1978) (same standard in *Bivens*–type action against federal officials [*Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)]). In *Navarette*, a state prisoner brought a § 1983 action against prison officials charging wrongful interference with his outgoing mail, a violation of his First Amendment rights. The Supreme Court held that the qualified immunity it had outlined for school officials in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), was applicable to state prison officials as well. The test enunciated in *Navarette* consists of two parts:

"Under the first part of the *Wood v. Strickland* rule, the immunity defense would be unavailing to [the prison officials] if the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right and if they knew or should have known that their conduct violated the constitutional norm. .

\* \* \* \* \* \*

"[T]he second branch of the *Wood v. Strickland* standard ... would authorize liability where the official has acted with 'malicious intention' to deprive the plaintiff of a constitutional right or to cause him 'other injury.'" *Navarette*, 434 U.S. at 562, 566, 98 S.Ct. at 862, *quoted in Chapman v. Pickett*, 586 F.2d at 25.

It is this two–pronged test which we apply here.

### A. *Denial of Witnesses*

The District Court found as fact that "the evidence demonstrates that the Committee believed that their denial of the request [for witnesses] was in compliance with *Wolff* and administrative regulation 804, both of which provide that a request for witnesses may be denied if it will be unduly hazardous to institutional safety or correctional goals." The Court also concluded that the Committee "could not have reasonably known that *Wolff* could be read to require reasons more specific than those enumerated in the *Wolff* decision." The Court went on to conclude that the Committee was here immune from damages for their denial of the witness request.

Taken as a whole, the District Court's broad findings of fact indicate that the Committee did not know and reasonably could not have known that more was required of them to fully comport with Hayes' constitutional rights. If these findings can be upheld, then the conclusion that the administrators were entitled to immunity for their decision to refuse to call witnesses was proper.

■ Our standard of review in examining a District Court's findings of fact is a narrow one. Unless the findings are clearly erroneous, we must accept them undisturbed. Fed.R.Civ.P. 52(a); *Dayton Board of Education v. Brinkman*, 443 U.S. 526, 534 n.8, 99 S.Ct. 2971, 2977 n.8, 61 L.Ed.2d 720 (1979). Only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" will the findings be set aside. *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954). Although we are to be more critical in our review when a District Court, as here, essentially adopts the findings prepared by the prevailing party, such findings are nonetheless to be measured by the "clearly erroneous" standard. *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 731 (7th Cir. 1979); *Schwerman Trucking Co. v. Gartland Steamship Co.*, 496 F.2d 466, 474–75 (7th Cir. 1974); *FS Services, Inc. v. Custom Form Services, Inc.*, 471 F.2d 671, 676 (7th Cir. 1972).

■ We turn now to the record. The subsequent testimony taken at the trial may be considered to inquire into the good faith of the defendants. This testimony reveals that two of the three Committee members were familiar with *Wolff* and all three members were familiar with the applicable administrative regulations incorporating parts of *Wolff*. They believed that the regulations incorporated all relevant federal and state law. However, *Wolff* expressly stated that the Constitution does not require that witnesses be called in prison disciplinary proceedings nor that reasons must be given for refusal to call a witness. Further, administrative regulation No. 804(II)(B)(6) states only: "The committee will state its reasons for refusing to call or interview a witness, whether it be for irrelevance, lack of necessity or the hazards presented in the individual cases." The statements in *Wolff* and the language of the regulation could reasonably, though erroneously, lead these officials to believe that their broad statement concerning the potential hazards of calling any witnesses would be sufficient to satisfy these requirements. It was not until we decided *Hayes I*

that more than the general, broad reasons given here were "clearly established" as being required by due process in these sorts of prison disciplinary proceedings. Thus, we cannot say that the District Court's broad factual findings that the Committee acted in good faith with respect to denial of witnesses are clearly erroneous.

### B. Reasons for Guilty Finding

The District Court filed as a finding of fact that "[t]he evidence at trial indicates that the defendants reasonably believed that provision of a transcript of the proceedings complied with the Constitution and regulations governing the requirements for statement of reasons." As above, our review of this finding must be under the narrow "clearly erroneous" standard.

*Wolff* explicitly requires that a " 'written statement by the factfinders as to the evidence relied on and the reasons' for the disciplinary action" be given.[5] *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2978–2979. The language of *Wolff*, with its explanation underlying the requirement, rendered the right to a written statement of evidence and reasons as "clearly established" at the time of Hayes' hearing.[6] Further, we believe that the members of the Committee should have known of that right. When the Supreme Court of the United States renders a decision on prison proceedings as it did in *Wolff v. McDonnell*, those involved in the conduct of such proceedings have a constitutional obligation to investigate and familiarize themselves with the Court's pronouncements. Moreover, the Illinois prison administration issued regulations in response to *Wolff*, applying its requirements, which reiterated the requirement of a writ-

ten statement, and each member of the Committee admitted that he was familiar with these regulations. Thus, we find that each Committee member should have known and did know of the constitutional requirement to provide the statement described in *Wolff*.

The key question in resolving the immunity issue thus becomes whether the Committee members knew or should have known that what they provided was constitutionally insufficient. Although not explicitly so worded, we understand the District Court's use of the term "reasonably believed" in its finding of fact to indicate that the Committee members did not know, and could not have reasonably been expected to know, that they were not complying. We see no indication that the members actually knew that what they provided was inadequate, and so in reviewing this finding we focus on whether they should have known.

The test is an objective one. We must look at what the Committee gave Hayes and consider whether a prison disciplinary committee could reasonably have concluded that it complied with the requirement of *Wolff*. Here, Hayes was provided with a copy of the transcript[7] of the proceedings and a copy of the violation report (Resident Information Report) as written by Warden Wolff. The transcript stated that the guilty finding was based upon the Warden's violation report and the report of the special investigator. A brief summary of the investigator's findings were included in the report, based on a telephone conversation with the investigator. The Committee also noted that a full report of the investigator was to follow. The investigator's summary

---

5. The Supreme Court in *Wolff* went on to enunciate why the provision of written statement was necessary. Such a statement allows administrative review, judicial review, explains the finding on the prisoner's record, and helps to insure that officials acted fairly. *Wolff v. McDonnell*, 418 U.S. at 565, 94 S.Ct. at 2979.

6. The Supreme Court decided *Wolff* on June 26, 1974—more than ten months prior to Hayes' hearing.

7. The document referred to as a "transcript" is actually the transcription of a stenographer's notes. While not an official transcript as the term is used in trial proceedings, it closely resembles such a document. In discussing it as what the Committee provided to Hayes, we will continue to refer to it as a transcript to most closely reflect its nature. The taking of a transcript at this type of disciplinary hearing was an unusual and extraordinary step invoked by the Committee especially for Hayes' hearing.

appearing in the transcript noted that Hayes called the meeting in the prison yard, that he was a ring leader, and a leader among the black residents. The investigator recommended that Hayes be transferred.

Whether the Committee should have known it violated Hayes' rights is a close question. If the Committee had provided merely the Warden's Resident Information Report as the basis for its finding, it would be clearly erroneous to find that the Committee reasonably believed it was complying with *Wolff*, in light of Regulation No. 804(II)(B)(9).[8] But more was provided here. The transcript which Hayes received covered the entire hearing and included the summary of the investigator's report.[9] It is the presence of this report in particular which tips the scales in our review of the District Court's finding on the immunity issue. If appropriately detailed and supported, and properly considered, such an outside investigative report may well constitute adequate basis for a disciplinary decision. Further, the Committee may have believed that it was incorporating by reference the full written report which was to follow. Although the Committee's statement provided to Hayes, including the transcript's summary of the investigator's conclusions, is constitutionally insufficient under *Wolff*, it does contain conclusions of the investigator upon which the Committee might have reasonably believed, at that time, constituted adequate basis for its decision. Thus, in light of the language of the regulation, and the sparse interpretation of *Wolff* at the time of Hayes' hearing, we cannot say, within the scope of the clearly erroneous standard of review, that the Committee should have known that what it provided violated the *Wolff* requirement. And even

though the reasons expressed in the transcript fall far short of what would be necessary to establish "conspiracy to incite to riot and commit mutinous acts," we cannot consider it bad faith merely because non–lawyer committee members err in their perception of the amount of evidence necessary to establish a violation.

Accepting the District Court's findings regarding both the denial of witnesses and the failure to give adequate reasons as not clearly erroneous, we conclude that the members of the Committee acted in good faith and are, therefore, immune from money damages.

### C. *Warden Wolff*

Hayes further claims that in addition to the Committee members, Warden Wolff is liable in damages for the unconstitutional conduct of the Adjustment Committee. Hayes argues that Wolff failed to properly supervise and train the members of the Committee concerning the due process requirements of *Wolff*, that the Committee's errors were a result of Wolff's conduct, and that the constitutional deprivations in this case were foreseeable, precluding good–faith immunity.

Even if Wolff could be held liable under Section 1983, *see Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), there is insufficient support in the record to conclude that the Warden acted in bad faith. The District Court found that Wolff was not "in any manner responsible" for the decision or actions of the Committee. While this is not very specific, we take as a necessary implication of this finding that the District Court believed there were no deficiencies in Wolff's supervision which were responsible for the constitutional vio-

---

**8.** This administrative regulation declares in part:

"The resident must be given a written statement ... of the evidence relied upon by the majority of the committee and the specific disciplinary action taken, as well as the reasons for disciplinary action.... It will not be sufficient for the committee's decision to simply adopt and copy the exact wording of the Resident Information Report."

Administrative Regulation No. 804(II)(B)(9); *see* note 3, *supra*.

**9.** The administrative regulation does not prohibit the use of such investigative reports as reasons for committee action, for an investigator's report is not the Resident Information Report referred to by the regulation.

lations in Hayes' hearing. There was testimony at trial that Wolff held regular staff meetings at which rules and requirements regarding disciplinary proceedings were discussed. Further, *Wolff* had been decided only ten months before, and Regulation 804 was apparently an administrative response to the requirements of that decision. Wolff could have reasonably believed that Regulation 804 provided adequate guidance for the members of the Committee regarding the requirements of *Wolff*, and until there was some need manifested, further instruction was not necessary. As discussed above, all members of the Committee testified that they were familiar with the regulation. Thus, we cannot conclude that the District Court's finding was clearly erroneous. Warden Wolff is entitled to good-faith immunity in his role as supervisor of the Adjustment Committee, and may not be held liable for money damages. *See Hampton v. Hanrahan*, 600 F.2d 600, 635 (7th Cir. 1979), *sum. rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

## VI. *RELIEF*

■ Because we find that the defendants are immune from damages liability, no monetary relief can be awarded to Hayes. However, he also requests that his violation be expunged from his prison record.

We have previously affirmed the expunction of a violation from a prisoner's record when that violation was established contrary to due process guarantees. *Ware v. Heyne*, 575 F.2d 593 (7th Cir. 1978). As in *Ware*, we have here found that Hayes' guilt was determined in violation of his constitutional due process rights. While it may be that harmless error will not work to require expunction, the defects in the procedures used by this Committee significantly affected Hayes' ability to demonstrate his innocence, and on a court's ability to assure itself that he was properly found guilty. This is far from harmless.

The plain meaning of this conclusion is that the guilty finding is invalid and cannot be allowed to remain. Not only would its presence implicitly vindicate the unlawful procedures used by the administrative officials in this case, but it would burden Hayes with the adverse collateral consequences of a serious violation. It would be repugnant to the meaning of constitutional protections if such a violation were allowed to work its harm in spite of its tainted origin. We believe that the only meaningful and effective form of relief available is to order the violation expunged from Hayes' prison record, and any adverse collateral consequences on that record neutralized, by expunction, explanation, or other appropriate means.

## VII. *OTHER ISSUES*

Hayes also raises issues regarding the sufficiency of the evidence upon which his guilty determination is based, and violations of his First Amendment rights. In light of our reversal of Hayes' violation on due process grounds, we need not reach these claims.

## *CONCLUSION*

Because no additional portions of the Committee's record have been brought forth since this Court's ruling in *Hayes I* we reaffirm our decision there that inadequate support appears in the administrative record to justify the Committee's refusal to call witnesses in Hayes' defense. Further, for the same reason, we find that the reasons stated in the record by the Committee are inadequate to support the guilty finding against Hayes on the violation charged.

The District Court properly concluded that the defendants were entitled to immunity from damages liability in this case, and was correct in refusing to award damages to Hayes. However, in light of our conclusion that Hayes was found guilty in violation of his due process rights, we remand the case to the District Court with instructions to order the violation expunged from Hayes' prison record and to neutralize all adverse collateral consequences on that record flowing therefrom.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.

SWYGERT, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that the actions of the prison authorities violated Hayes' due process rights and that he is therefore entitled to injunctive and declaratory relief. I must respectfully dissent, however, from that part of the opinion which holds the defendants to be immune from monetary damages under the doctrine of *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The prison officials are not entitled to immunity

> if the constitutional right allegedly infringed by them was clearly established at the time of their conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated the constitutional norm.

*Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 860, 55 L.Ed.2d 24 (1978). The facts in the record indicate that all three of these criteria are met in this case.

The Supreme Court's decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), predated the actions of the Institutional Adjustment Committee by ten months. That decision clearly established the right of a prisoner to a " 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* at 564, 98 S.Ct. at 861, quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972).[1] The Illinois Department of Corrections incorporated this requirement in its Administrative Regulation No. 804 (II)(B)(9), which provided, *inter alia,* "it will not be sufficient for the committee's

decision to simply adopt and copy the exact wording of the Resident Information Report."[2] The majority admits that two of the three Committee members testified at the trial that they were familiar with *Wolff* and that all three knew the requirements of Regulation 804. They knew also that the regulation encompassed all relevant federal and state law. Nonetheless, they ignored the dictates of *Wolff* and their own regulation and provided Hayes only with a statement that he was guilty "based on the violation report as written and upon the report by the special investigator."

The language of the quoted provision of the administrative regulation is quite clear that the Committee must state its own conclusions and not merely incorporate by reference previous internal reports. I can see little difference between reliance upon only Warden Wolff's Resident Information Report and upon an outside investigator's report—a distinction upon which the majority bases its entire decision not to award damages. *Supra,* p. 484. The Committee did not spell out on its own its reason for the decision; that is precisely the constitutional infringement against which *Wolff* and Regulation 804 were designed to protect. Similarly, the provision of a transcript of the hearing does little to inform the prisoner of the reasons for the decision. It is unreasonable to believe that the Committee did not know they were violating the regulation when it did no more than refer to others' reports. Under the test enunciated in *Navarette,* they are therefore not entitled to immunity.

I must also dissent from the majority's conclusion that Warden Wolff is not liable for failing properly to supervise and to in-

---

1. Our holding in *Hayes v. Walker,* 555 F.2d 625 (7th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (*Hayes I*), did not extend that of *Wolff* or require any more than did the Supreme Court. Both decisions required a statement of reasons that was meaningful both to the prisoner and to reviewing courts. At the time of the Committee's actions in this case, it was "clearly established" that a cursory statement such as the one provided to Hayes was constitutionally insufficient. In

contrast, the requirement of a detailed statement of reasons for the denial of a witness request was left open by the Supreme Court in *Wolff* and only established in this circuit in *Hayes I.* The defendants could not therefore be held liable for their failure to provide such a statement. Majority op., *supra,* pp. 490–491.

2. The full text of this provision is quoted in the majority's opinion, *supra,* n. 3 at p. 487.

struct the Committee members. The law in this circuit is clear that section 1983 liability extends to persons on the basis of the roles as supervisors. *Hampton v. Hanrahan*, 600 F.2d 600, 626–27 (7th Cir. 1979), citing *Schnell v. City of Chicago*, 407 F.2d 1084, 1086 (7th Cir. 1969). The warden appointed the members of the Committee, and it was his responsibility to ensure that they understood and complied with the requirements of *Wolff*. He testified at trial that he knew in May, 1975, that committee members had failed in the past to comply with procedural requirements. His failure to remedy this situation led to the deprivation of Hayes' rights in this case, and the warden must therefore be held liable.[3]

The majority's decision encourages official ignorance of the law. Prison authorities may claim, as they did in this case, that they mistakenly believed they were fulfilling the requirements announced in *Wolff*. It should be no defense to suggest, as defendants did at trial, that no one had explained *Wolff* to them. "A prison official may not take solace in ostrichism." *Little v. Walker*, 552 F.2d 193, 197 (7th Cir. 1977), cert. denied, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). The Supreme Court's language in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), is as applicable to prison authorities as it was to school officials:

> The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives by the presence of actual malice.

*Id.* at 321, 95 S.Ct. at 994. Ignorance of the law is never an excuse, and the majority should not permit prison officials so to abdicate their responsibility to learn it.

The facts in the record indicate that the decision of the district court was clearly erroneous. The standard prescribed by the Supreme Court in *Navarette* is one of objective good faith. It is unreasonable for the Committee not to have known that they were denying Hayes his right to a meaningful statement of reasons for his disciplinary action. Their subjective intent to apply *Wolff* properly, upon which the district court based its decision,[4] is irrelevant under an objective good faith standard. In view of the specific requirement in Regulation 804 not merely to refer to the prior investigative report, the Committee could not reasonably believe they were complying with the law when they did just that. Although courts of appeals should not redetermine facts *de novo* upon appellate review, when the facts in the record below themselves indicate that the decision of the district court was clearly erroneous, the decision must be overturned.

The Supreme Court held in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that a plaintiff may recover compensatory damages for violation of due process rights upon proof of injury, including mental and emotional distress. Hayes testified at trial regarding his mental and

---

3. The cases of *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), and *Chapman v. Pickett*, 586 F.2d 22 (7th Cir. 1978), in which supervisory officials were held not liable, are clearly distinguishable from the present case. In those cases, no causal connection was shown to exist between the misconduct and any act or omission by the supervisors. Here, on the other hand, Warden Wolff's failure to educate the Committee members on the rights of inmates at disciplinary hearings was a direct cause of the denial of due process to Hayes.

4. The court below adopted virtually verbatim the findings proposed by defendants. Although the majority states that the same "clearly erroneous" standard is to be applied, *supra*, p. 490, the wholesale adoption of proposed findings creates a greater likelihood that the decision is erroneous. Such an action indicates a lack of adequate consideration by the court of all the issues involved in the case. The majority admits that such findings should be examined more critically to determine whether they are clearly erroneous, *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 731 (7th Cir. 1979); *FS Services, Inc. v. Custom Farm Services, Inc.*, 471 F.2d 671, 676 (7th Cir. 1972), but its opinion fails to do so. The majority opinion interprets every vague finding favorably towards the defendants. That is not the critical review of which we spoke in our earlier decisions.

emotional distress resulting from the denial of his due process rights. Furthermore, he suffered damages as a result of confinement in segregation both prior to and following the hearing. *Chapman v. Pickett*, 586 F.2d 22, 28 (7th Cir. 1978); *Buise v. Hudkins*, 584 F.2d 223, 233 (7th Cir. 1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). His transfer to Stateville Prison caused further injury.

I would therefore reverse the decision of the district court *in toto* and, in addition to the ruling of the majority, remand for a new trial on the question of damages.