73 F.3d 364
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Robert MERCER, Petitioner-Appellant,
v.
Bruce JORDAN, Respondent-Appellee.
 No. 94-2639.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 20, 1995.*
Decided Dec. 22, 1995.
 
 Before CUMMINGS, KANNE and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Robert Mercer, a former state prisoner, appears pro se and appeals the district court's denial of his 28 U.S.C. Sec. 2254 petition seeking relief from a prison disciplinary sanction. His release from the Indiana State Farm prison was delayed[1] when his good-time credits were revoked after he was found to have violated a prison regulation prohibiting lying to prison staff by the Conduct Adjustment Board ("CAB"). We find that the disciplinary proceedings deprived Mercer of due process.
 
 
 2
 Mercer's disciplinary hearing stemmed from a letter (the "letter") he wrote to defendant Bruce Jordan, the superintendent at the Indiana State Farm prison, concerning an alleged beating of another prisoner, Anthony Maddox, by prison staff. Internal Affairs Officer Jerry Collins investigated Mercer's allegations and filed a conduct report ("conduct report") against Mercer dated October 14, 1993. Collins found that Mercer lied to prison staff because Mercer admitted he had not actually seen the alleged beating, but rather had only assumed that it had happened after seeing an officer mimic a gesture as if he were kicking at something on the floor. (R. at 12). After his interview with Collins, Mercer submitted a grievance report (the "report") to Jordan regarding this same incident. This report stated that he informed Collins that his allegations were based on "information and belief" founded on what he heard and the subsequent mimicking gestures by the officers, and that he asked Collins to question Maddox to verify the allegations. Mercer also reported that because of Collins' "unwarranted conduct report" he was "screened" for a "Code 350 violation" for lying to staff. In addition, Mercer reported that the screening officer, officer Moody, refused to provide Mercer with a copy of his own letter, and refused to call Maddox as a witness for Mercer's upcoming disciplinary hearing because Mercer did not know Maddox's prisoner number.[2] Evidently, Mercer learned the requisite number post-screening as he included it on the grievance report that he submitted to Jordan two days before the CAB hearing.
 
 
 3
 On October 20, 1993, Mercer appeared before the CAB board which found that he violated prison regulations by lying to prison staff. The board based its decision upon Collins' conduct report, Mercer's letter to Jordan, and Mercer's hearing testimony that prison officers took Maddox to an area behind a door where Mercer could not observe, but from where he could hear scuffling noises and Maddox's screams. Mercer properly filed an administrative appeal in which he contested the sufficiency of evidence against him: He stated, "[t]he only way I should have been found guilty was if Maddox was not beaten," and asked, "[o]n what basis was I found guilty?" (R. at 2A, Ex. E). He also contested the board's refusal to provide him a copy of his letter or to allow him to call a witness. Id. Jordan denied his appeal based on Mercer's admission to Collins of not actually seeing the incident, and the disciplinary review manager affirmed. (R. at 12, Ex. D, E). After exhausting these state administrative remedies, Mercer properly filed a petition under Sec. 2254 alleging constitutional deprivations during the hearing. Harris v. Duckworth, 909 F.2d 1057, 1058 (7th Cir.1990) (habeas petition proper to challenge loss of good-time credits since judicial review nonexistent in Indiana).
 
 
 4
 Looking at the petition with the required liberality, Haines v. Kerner, 404 U.S. 519, 520 (1972), we find that Mercer challenges the disciplinary proceeding on three bases[3]: (1) that he was denied procedural due process because he was not given a copy of his letter prior to the hearing; (2) that he was denied procedural due process because he was not allowed to call a witness (Maddox); and (3) that he was denied procedural due process because the evidence before the CAB was insufficient to support a finding that he lied to prison staff.
 
 
 5
 The deprivation of good-time credits involves a deprivation of a liberty interest and therefore requires the state to comply with the procedural due process protections identified by Wolff v. McDonnell, 418 U.S. 539 (1974); Superintendent v. Hill, 472 U.S. 445 (1985). Wolff guarantees a prisoner's procedural right to present documentary evidence in his defense at a disciplinary hearing, and to call witnesses on his behalf when consistent with institutional safety and correctional goals. Wolff, 418 U.S. at 563-67. Due process also requires that "some evidence" support the disciplinary board's finding of guilt. Hill, 472 U.S. at 455-56.
 
 
 6
 Here, Mercer was not allowed to use his letter to prepare for his hearing or to see the letter during the hearing itself. In response to Mercer's habeas petition, Jordan argued that retaining the letter was required to conceal Jordan's confidential notations made in the margin. (R. at 13, p. 6). Although maintaining confidentiality of prison staff remarks may be consistent with correctional system goals, the denial of exculpatory evidence violates due process. Chavis v. Rowe, 643 F.2d 1281, 1286 (7th Cir.), cert. denied sub nom., Boyles v. Chavis, 454 U.S. 907 (1981). The district court found that Mercer did not argue that the letter was exculpatory even after the court ordered that Mercer be given a redacted copy of his letter. The court stated that Mercer's argument--that the letter did not contain a lie--was essentially an attack on the sufficiency of evidence, an argument Mercer waived in his Sec. 2254 petition.
 
 
 7
 We agree that denying Mercer the letter was not a constitutional deprivation. To show a constitutional deprivation, Mercer must show that the letter was exculpatory in the sense that his having it would have changed the outcome of the hearing. See Milone v. Camp, 22 F.3d 693, 703 (7th Cir.1994), cert. denied, 115 S.Ct. 729 (1995). Mercer has failed to allege any such prejudice. We agree with the district court that none seems likely given that (1) Mercer had recently written the letter, and (2) notice of the charge was not an issue since the conduct report clearly indicated the facts--his admission of not actually seeing the alleged beating--upon which the charge was based. See Rasheed-Bey v. Duckworth, 969 F.2d 357 (7th Cir.1992). Thus, denying Mercer the letter did not deprive him of due process.
 
 
 8
 We address Mercer's second and third claims together. Thus, we consider whether Mercer was constitutionally deprived of his right to call a witness, and whether even in the absence of Maddox's testimony, the evidence against Mercer was sufficient to find him in violation of the prison regulation prohibiting lying to prison staff. Officer Moody and Mercer submitted conflicting affidavits on the issue of whether Mercer specifically asked that Maddox be called as witness. (R. at 16, Ex. 2; 22). The district court found this factual dispute irrelevant because Maddox's absence could at most constitute harmless error under Powell v. Coughlin, 953 F.2d 744, 749 (2d Cir.1991) (harmless error analysis applies in challenge to prison disciplinary proceeding) and Hayes, 637 F.2d at 493 (same). The court reasoned that because a fair reading of Mercer's letter was that Mercer claimed to have "personal knowledge" about the alleged beating, Maddox's testimony was irrelevant. The court indicated that whatever actually happened, it would not change the fact that Mercer "lied" by stating something as a fact when he had only surmised it from sounds he heard and gestures he observed following the alleged beating.[4]
 
 
 9
 Under this narrow reading of Mercer's letter, Maddox's testimony may indeed be irrelevant and thus the failure to call Maddox could only be harmless error. See Forbes v. Trigg, 976 F.2d 308, 318 (7th Cir.1992) (due process did not require calling witness whose "testimony could have added little"). We too believe that it is not necessary to resolve the conflict between the two affidavits, but for a different reason--the disciplinary board's finding was not supported by some evidence, as required under Hill, 472 U.S. at 455-56.
 
 
 10
 Here, the evidence was that Mercer stated something as a fact and then later admitted he did not actually see the alleged incident. At the hearing, however, Mercer explained that he heard scuffling and Maddox's screams. In essence, Mercer was disciplined because his personal knowledge of the beating was not based on sight, but rather on sound. Since all knowledge including that based on sensory perceptions is inferential, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir.1989), Mercer's "admission" does not satisfy the "some evidence" standard. We do not think that assertions based on sensory perceptions are mere "conjectures." See id. This case is clearly distinguishable from Hill where a collective guilt theory satisfied the "some evidence" standard. Hill, 472 U.S. at 457 ("some evidence" supported finding of guilt where defendant was one of three inmates seen fleeing the scene of the crime). Although "meager" evidence may satisfy the "some evidence" standard, "t]he evidence before the disciplinary board must point to the accused's guilt." Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir.1992) (internal quotes and citation omitted). This assures that "prisoners are not subjected through sloppy procedures to an undue risk of being disciplined for things that they have not actually done." Saenz v. Young, 811 F.2d 1172, 1174 (7th Cir.1987); See Young v. Kann, 926 F.2d 1396, 1402 (3d Cir.1991) (due process violation where record shows "no primary evidence of guilt in the form of witness statements, ... or any form of corroborative evidence").
 
 
 11
 Because there is no other evidence showing that Mercer lied, we disagree with the district court that Maddox's testimony was irrelevant. See Kingsley v. Bureau of Prisons, 937 F.2d 26, 31 (2d Cir.1991). Without Maddox's testimony, the disciplinary board's findings do not even satisfy the minimum "some evidence" requirement of constitutional due process. Accordingly, we reverse and order that the disciplinary finding be expunged from Mercer's prison record.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No statements were filed. Accordingly, the appeal is submitted on the briefs and the record
 
 
 [1]
 Although Mercer was released on January 9, 1995, and completed his parole term on May 11, 1995, we have jurisdiction because he was in custody when he filed his Sec. 2254 petition, Maleng v. Cook, 490 U.S. 488, 490-91 (1989), and his claims are not mooted by his release because he would have been released earlier but for the alleged constitutional deprivation. Jackson v. Carlson, 707 F.2d 943, 946 (7th Cir.1983) (noting that a record of a prison disciplinary infraction might delay parole and therefore stave off mootness), cert. denied sub nom., Yeager v. Wilkinson, 464 U.S. 861 (1983). A claim is not moot where "collateral consequences" survive a petitioner's release. Carafas v. La Vallee, 391 U.S. 234, 237 (1968). In Lane v. Williams, 455 U.S. 624, 633 (1982), claims became moot because no lingering consequences existed where the petitioners only challenged their original sentence, rather than their underlying conviction or the parole board's finding that they violated their parole term. In this case, Mercer challenged the CAB's finding that he lied to prison staff. This court has recognized collateral consequences of disciplinary board findings. McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir.1982) (stating that "even something so hypothetical and remote as the possibility that the record of [the petitioner's prison disciplinary segregation] might result in a stiffer sentence if the petitioners were later convicted of an unrelated offense ... would be enough to prevent their release from mooting the petitions."); Hayes v. Thompson, 637 F.2d 483, 493 (7th Cir.1980) (same), overruled in part on other grounds, Ponte v. Real, 471 U.S. 491, 493 (1985). Moreover, under Heck v. Humphrey, 114 S.Ct. 2364, 2372 (1994), Mercer must challenge this finding under 28 U.S.C. Sec. 2254 as a prerequisite to claiming damages for constitutional deprivations under 42 U.S.C. Sec. 1983. Hence, we find that the board's finding, unexpunged, is a sufficient "collateral consequence" to survive the mootness doctrine. Accord Leonard v. Nix, 55 F.3d 370, 372-73 (8th Cir.1995) (finding that a "collateral consequence" stems from the Heck v. Humphrey requirement of vacating a disciplinary finding before pursuing a damages claim)
 
 
 [2]
 There is a factual dispute concerning whether Mercer requested Maddox as a witness. Moody's affidavit that Mercer only requested "witness statements" is contradicted by Mercer's affidavit that he specifically requested, but was denied, Maddox as a witness
 
 
 [3]
 The district court granted Mercer's petition to proceed in forma pauperis on appeal as to his claims that he was constitutionally deprived of his letter and of his right to call a witness. In its entry, however, the court alternatively considered the sufficiency of evidence against Mercer. In addition, our review of the record shows that Mercer challenged the sufficiency of evidence in his administrative appeals that he attached to his habeas petition (R. at 2A, App. E), within the habeas petition itself (R. at 2A paragraphs 4, 12, 17), as well as within his traverse to the government's response to his habeas petition (R. at 14). Thus, we consider all three of Mercer's arguments made in his appellate brief
 
 
 [4]
 The court's treatment of this issue shows that it did not make a credibility determination--that we would have reviewed deferentially--that the alleged beating did not occur