**Alvin OSWALT, Plaintiff,**

v.

**Salvador GODINEZ, et al., Defendants.**

**No. 94 C 2259.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 15, 1995.

Alvin P. Oswalt, pro se.

Jill Anne Glickstein, Illinois Attorney General's Office, Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL, for defendants Salvador A. Godinez, Tom Schonauer, Jerome L. Springborn, Mel Allen, Howard A. Peters, III, A. Johnson, C. Del Priore, Phil Roos, Mary King, Philip L. Tinsley.

## MEMORANDUM ORDER AND OPINION

GETTLEMAN, District Judge.

Plaintiff, Alvin Oswalt, an inmate in the Illinois prison system, proceeding *pro se*, filed a complaint alleging officials[1] at Stateville Correctional Center ("Stateville") violated his constitutional rights as protected by the Fourteenth Amendment to the United States Constitution and the Civil Rights Act, 42 U.S.C. § 1983. Specifically, plaintiff charges that defendant Godinez failed to protect his due process rights by illegally extending his period of confinement under investigative status and that defendant Schonauer violated his constitutional rights by delaying an investigation into plaintiff's role in a possible escape attempt. Plaintiff also alleges that defendant Johnson unlawfully barred certain witnesses and documents from consideration at a prison hearing. Plaintiff further claims that defendants DelPriore and King failed to participate in plaintiff's grievance hearings and that the hearing was conducted in a manner biased against plaintiff. Plaintiff finally claims that a prison hearing committee violated his due process rights by finding him guilty of offenses that it was impossible for him to have committed.[2]

Plaintiff filed his complaint on April 7, 1994. Defendants have moved to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff responded with a motion to dismiss defendants' motion to dismiss. For the reasons set forth below, the court grants defendant's motion to dismiss in part and denies it in part.

## STANDARD OF REVIEW

When considering a defendant's motion to dismiss, the court must view the

---

1. Plaintiff's original complaint named ten defendants: Melvin Allen, Carol DelPriore, Salvador Godinez, Adrienne Johnson, Mary King, Howard Peters, Thomas Schonauer, Jerome Springborn, Philip Tinsley and Phil Roos. Roos served as a citizen member of the prison's Administrative Review Board. Apparently he was never served since he was not employed either by Stateville or the Illinois Department of Corrections. Plaintiff has voluntarily dismissed defendants Allen, Pe-

ters, Springborn and Tinsley. Therefore, this opinion concerns only defendants DelPriore, Godinez, Johnson, King and Schonauer.

2. Plaintiff asserted other due process claims in his complaint associated with the above-listed defendants who have been dismissed from the case. Those claims are dismissed by the dismissal of the relevant defendants.

plaintiff's allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 43, 78 S.Ct. 99, 100, 2 L.Ed.2d 80 (1957). All well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). The plaintiff is entitled to all reasonable inferences that can be drawn therefrom. *Ellsworth v. Racine,* 774 F.2d 182, 184 (7th Cir.1985). Additionally, a court must construe *pro se* pleadings liberally. *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988). Mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss a *pro se* complaint. *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985).

## FACTS

From September 29, 1992 until April 17, 1993, plaintiff occupied a cell at Stateville previously used to house transfer inmates. In April 1993 plaintiff shared the cell with four other inmates. On April 17, 1993, a "shakedown" inspection of plaintiff's cell revealed that a portion of a metal window frame had been sawed apart, creating an opening in the window of several inches. The frame had been glued back in place and repainted to camouflage any alterations. Paint matching that used on the window frame and glue were found in the cell.

Immediately following the discovery, plaintiff was removed from the cell and placed in a prison segregated confinement facility known as I House. There plaintiff was informed by the prison superintendent that an investigative report (the "Investigative Report") had been written against him and that plaintiff had been placed into investigative confinement status pending an investigation into his involvement in an attempted escape. Plaintiff did not receive a copy of the Investigative Report until April 27, 1993.

On April 24, 1993, plaintiff was moved from I House to an isolation room in the prison infirmary. On May 12, 1993, Stateville's warden, defendant Salvador Godinez, authorized a thirty-day continuation in plaintiff's confinement in investigative status, effective May 15, pursuant to Illinois Department of Corrections Rules 504A—Discipline and Grievances, Subsection 504.50 Part A, Subpart 7. On June 2, 1993, plaintiff was informed by a correctional officer that the pending investigation was complete, and he was moved to a general prison population room in the infirmary. The next day this fact was confirmed by the prison's chief investigator, defendant Thomas Schonauer.

On June 9, 1993, plaintiff was moved out of the infirmary and into a general prison population cell. Soon thereafter plaintiff was summoned to defendant Godinez's office. There he was informed that the investigation was complete. On July 7, 1993, plaintiff approached his prison counselor regarding several grievances filed in relation to his incarceration and its effects. The counselor forwarded them to assistant warden Springborn that same day.

The next day, plaintiff was served with a disciplinary report (the "Disciplinary Report") written by defendant Schonauer, dated July 7, 1993, charging him with three offenses: Escape; Conspiracy to Attempt Escape; and, Damage/Misuse of property. On July 9, 1993, plaintiff delivered a request to the prison Adjustment Committee (the "Adjustment Committee"), in accordance with prison regulations, for certain witnesses to be called at his disciplinary hearing.

On July 14, 1993, the Adjustment Committee held a hearing on the Disciplinary Report. Defendant Adrienne Johnson presided and defendants Carol DelPriore and Mary King sat as members. Plaintiff pled not guilty to the charges against him. He was informed by defendant Johnson that the Adjustment Committee would hear only from witnesses who shared plaintiff's cell on the day of the shakedown inspection. Plaintiff alleges that defendant Johnson ignored his written statement regarding the charges against him and conducted the hearing in a biased manner. He further claims that defendants DelPriore and King remained silent throughout the hearing and did not participate in any meaningful way.

On July 15, 1993, plaintiff was again placed in segregated confinement in I House by order of the Adjustment Committee, pending its decision. On July 16, 1993, plaintiff filed a grievance alleging a violation of due process rights regarding the investigation surrounding the alleged escape. On August 10, 1993, plaintiff received a copy of the Adjustment Committee's finding that he was guilty of the three charges against him. He was sentenced to one year in segregated confinement, one year's loss of good time credits, one year in C-grade confinement, three months denial of commissary privileges, three months denial of audio-visual privileges and restitution of $4.90.

## DISCUSSION

### I. Extension of Investigative Confinement

■ Plaintiff claims that defendant Godinez's extension of his confinement in investigative status violated his due process rights. The Supreme Court has recognized that prison officials are authorized to place prisoners suspected of wrongdoing in administrative segregation pending an investigation or until a hearing can be convened. *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The Court in *Hewitt* stressed that the due process clause of the Fourteenth Amendment, standing alone, confers no liberty interest on prisoners to remain in the general prison population. *Id.* at 468, 103 S.Ct. at 869–70. The Court noted, however, that states could create liberty interests that would entitle prisoners to due process rights they otherwise might not enjoy. *Id.* at 471–72, 103 S.Ct. at 871–72.

Very recently in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (No. 93–1911), the Court constricted its definition of state-created liberty interests for convicted prisoners. "[T]hese ... will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection of the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life." *Id.* at ——, 115 S.Ct. at 2295 (internal citations omitted).

The Court concluded that disciplinary confinement, "though concededly punitive, does not present a dramatic departure from the basic conditions of [a prisoner's] ... sentence." *Id.* at ——, 115 S.Ct. at 2301. Disciplinary segregation does "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.*

In *Cain v. Lane,* 857 F.2d 1139, 1144 (7th Cir.1988), the Seventh Circuit examined sections of the Illinois prison regulations—provisions related to those at issue in the instant case—authorizing prison officials to place prisoners in investigative segregation pending a misconduct inquiry. Conducting its examination according to *Hewitt*'s more inclusive due process standards, the Seventh Circuit held that the regulations conferred no liberty interest upon prisoners to remain free of investigative segregation because the regulations did not employ language of a mandatory nature, such as "shall," "will," or "must." *Cain,* 857 F.2d at 1144. The Court's decision in *Sandin* eliminates the more extensive due process approach of *Hewitt.* It follows logically that if the Illinois regulations at issue in *Cain* did not create a liberty interest under *Hewitt,* they do not create a liberty interest under the more stringent guidelines outlined by the Supreme Court in *Sandin.*

Institutional Directive 504A permits the warden to extend investigative confinement for an additional thirty days if an investigation cannot be completed in the original thirty-day period. The regulation states:

> In the event that an investigation cannot be completed within 30 days due to an institutional emergency, the Chief Administrative Officer may personally authorize, in writing, an extension of up to 30 days placement in confinement pending investigation. As used in this Section, an institutional emergency included riots, strikes, lockdowns and natural disasters.

Ill. Dep't Corr. Rules 504A, 504.50(c)(8), *adopted at* 8 Ill. Reg. 14427, effective Aug. 1, 1984, *amended at* 16 Ill. Reg. ——, effective July 1, 1992, *implementing and authorized by* 730 ILCS 5/3–8–7 (1993).

Applying the Seventh Circuit's rationale in *Cain,* this directive does not appear to employ the necessary mandatory language to create a liberty interest, although the court observes that the directive seems clearly intended to allow continued investigative confinement only in the event of an "institutional emergency."

In any event, the relevant liberty-interest inquiry prescribed by *Sandin* is whether the prison regulation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* at ——, 115 S.Ct. at 2300. Despite obvious difficulties associated with investigative segregation—including the virtually unchecked power it bestows on prison officials to confine an inmate in conditions more severe than those accorded the general prison population—the Supreme Court and the Seventh Circuit have both held that such conduct does not ordinarily violate a prisoner's due process rights.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin (quoting Jones v. North Carolina Prisoners Labor Union,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977), *quoting Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) (internal quotations omitted)). "Discipline by prison officials in responding to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. Courts have accorded prison officials wide latitude and deference in executing policies and practices that in their judgment are needed to preserve internal order, discipline and security. *Pardo v. Hosier,* 946 F.2d 1278, 1280 (7th Cir. 1991).

The warden's extension continued an approved practice of investigative confinement. Administrative confinement is unpleasant and difficult for the inmates for whom it is prescribed. Yet, plaintiff's *pro se* complaint fails to demonstrate that his extended confinement was characterized by atypicality or significant hardship, at least in relation to the type of treatment normally reserved for prisoners under investigation for alleged participation in schemes of escape.

Because plaintiff has failed to state a claim regarding defendant Godinez's extension of investigative confinement status, that part of his complaint is dismissed without prejudice.

## II.  Investigative Delay

■  Plaintiff alleges that defendant Schonauer violated his due process rights by failing to complete his investigation of plaintiff's role in the possible escape attempt until more than three months after the event occurred.

A delay occurring between an incident and subsequent disciplinary proceedings does not violate a prisoner's civil rights. *United States v. Warden, Stateville Correctional Ctr.,* 635 F.2d 656, 659 (7th Cir.1980), *cert. denied,* 454 U.S. 843, 102 S.Ct. 156, 70 L.Ed.2d 128 (1981). A justified time lapse likewise does not deprive a plaintiff of due process. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Caruth v. Pinkney,* 683 F.2d 1044, 1052 (7th Cir.1982) (per curiam), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983).

In the instant case, the investigation into plaintiff's role in a possible escape attempt was not concluded until more than three months after the inquiry began. While this would appear to be a long time given the easy availability of witnesses to the event in question, such a delay does not necessarily rise to the level of constitutional violation because prison disciplinary proceedings are not criminal prosecutions. *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2974–75. The "full panoply of rights due a defendant in such proceedings does not apply." *Id.* Without such rights upon which to rely, plaintiff is unable to claim a violation of due process as protected by the Constitution.

Accordingly, plaintiff's complaint against defendant Schonauer is dismissed for failure to state a claim.

## III.  Adjustment Committee Hearing

■  The due process requirements for prison disciplinary hearings are set forth in

*Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). They are: (1) written notice of the charge against the prisoner, given at least twenty-four hours prior to the hearing; (2) the right to appear in person before an impartial hearing body; (3) the right to call witnesses and to present documentary evidence, when to do so will not unduly jeopardize institutional safety or correctional goals; (4) a written statement of reasons for the disciplinary action taken. *Id.* at 563–67, 94 S.Ct. at 2978–80; *Cain,* 857 F.2d at 1145.

Plaintiff was accorded adequate written notice of the charges against him. He received a copy of the Disciplinary Report on July 8, 1993 and his hearing was not held until July 14, 1993, thus satisfying the requirement that he be given written notice of the charges against him at least twenty-four hours before his hearing. The Disciplinary Report stated that plaintiff had been charged with three offenses: Escape, Conspiracy to Attempt Escape and Damage/Misuse of property. The Disciplinary Report further identified the time, date and place where the alleged offenses occurred. The notice requirement in *Wolff* is designed to allow "the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff,* 418 U.S. at 564, 94 S.Ct. at 2978. The record indicates that plaintiff was able to present a defense to the charges against him. The clarity with which the Disciplinary Report sets out the relevant information meets the appropriate constitutional standard.

Plaintiff was likewise allowed to appear in person before an impartial hearing body. On July 14, 1993, plaintiff appeared before the prison Adjustment Committee. At that time he was allowed to speak in his own behalf, call witnesses and present documentary evidence. The proceedings therefore comported with the second requirement outlined by *Wolff.*

■ Plaintiff contends that his due process rights were violated because he was not allowed to call all his proposed witnesses and because his documentary evidence was accepted by defendant Johnson of the Adjust-

ment Committee only with great reluctance and then later ignored.

■ Plaintiff called four witnesses in his behalf, but was not permitted to call others to testify. The four called were plaintiff's cellmates, the occurrence witnesses best situated to testify as to plaintiff's role in any escape scenario. He was not allowed to call character witnesses, including members of the prison staff. Because prison disciplinary hearings are not criminal trials, they do not convey to prisoners the rights enjoyed by defendants in criminal proceedings. *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2975. The right to call witnesses in prison disciplinary hearings is not absolute. *Baxter v. Palmigiano,* 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976). It is "circumscribed by the necessary mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* (*quoting Wolff,* 418 U.S. at 556, 94 S.Ct. at 2975) (internal quotations omitted). This general prohibition means, for example, that prisoners are not entitled to cross-examine adverse witnesses, if prison officers determine such action unwise. *Wolff,* 418 U.S. at 568, 94 S.Ct. at 2980–81; *Chavis v. Rowe,* 643 F.2d 1281, 1286 (7th Cir.1981). It also means that prisoners are not granted an unrestricted right to call witnesses from the prison population since such a move "carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979.

Given that prison officials have the necessary discretion to refuse to call witnesses in an effort to balance due process rights with correctional goals, *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979–80; *Chavis,* 643 F.2d at 1286, defendants in the instant case exercised that power properly.

■ Due process does require that some explanation justifying a decision not to call certain witnesses to testify be entered in the administrative record of a prisoner's disciplinary hearing. *Hayes v. Thompson,* 637 F.2d 483, 488 (7th Cir.1980). This was provided in the instant case when the Adjust-

ment Committee stated in its Disciplinary Report that it did not call plaintiff's other witnesses because they neither witnessed nor had involvement in the incident. The standard in *Hayes* requires only that some justification be entered into the administrative record of the hearing proceedings. *Id.* Defendants have met this burden.

Plaintiff contends that the Adjustment Committee at first refused to receive his documentary evidence, then accepted it only with great reluctance and finally ignored it in reaching its verdict. Plaintiff does concede that the Adjustment Committee did finally accept his documentary evidence. He offers no proof, however, that would support his claim that the Adjustment Committee ignored it in reaching its decision regarding his guilt. Plaintiff may intend to imply that his guilty verdict is proof of the Adjustment Committee's lack of consideration of his documentation. Such an attenuated claim, standing on its own, however, is insufficient to prove his allegation.

Plaintiff states that his due process rights were violated when defendants DelPriore and King did not actively participate at his hearing. Plaintiff points to no law, however, that supports his contention that lack of vocal participation constitutes a due process violation, and this court is unaware of any law upholding that principle. Accordingly, plaintiff fails to state a claim against defendants DelPriore and King on this allegation.

Plaintiff also alleges that the Adjustment Committee hearing was conducted in a biased manner. To meet the level of scrutiny imposed by courts, a charge of bias must prove that the decisionmaker has actually prejudiced the case or had direct personal involvement in the underlying charge. *Merritt v. De Los Santos,* 721 F.2d 598, 600 (7th Cir.1983). Plaintiff offers no support for this claim other than the Adjustment Committee's refusal to call all his witnesses, his allegation that the Adjustment Committee ignored his documentary evidence and his claim that defendants DelPriore and King did not participate at the hearing.

The refusal of the Adjustment Committee to call all plaintiff's witnesses, as shown above, does not violate his due process rights as delineated by *Wolff.* The Adjustment Committee offered sufficient justification for its decision to call only four witnesses in its written report of the proceedings. These procedures meet the standards of due process. *Hayes,* 637 F.2d at 488.

Plaintiff's documentary evidence was accepted by the Adjustment Committee—as required by *Wolff*—and plaintiff offers no basis to suggest it was ignored, save the verdict of the Committee.

Plaintiff's contention that lack of participation by defendants DelPriore and King at his Adjustment Committee hearing violated his due process rights is without foundation in law. Even if plaintiff could muster a legal argument to support his claim, he has offered no evidence except his contention that defendants DelPriore and King did not speak at his hearing to suggest that they did not participate at his hearing. Defendants DelPriore and King were present at plaintiff's hearing. Presumably, they also participated in the Adjustment Committee's determination of guilt, since they both signed the Adjustment Committee's summary of plaintiff's proceedings.

Accordingly, plaintiffs' claim of bias fails and plaintiff fails to state a claim against defendants Johnson, DelPriore and King under the foregoing allegations.

### Prison Charges

The final requirement of *Wolff* is that a prisoner receive a written statement of the reasons for the disciplinary action taken. It is here that defendants' argument founders. In its summary, the Adjustment Committee stated that it had relied on plaintiff's own admissions, prison records, and the credibility of witnesses to reach the determination that plaintiff was guilty of the charges against him. In *Superintendent, Mass. Correctional Inst., Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Supreme Court held that the requirements of due process are met if there is "any evidence in the record that could support the conclusion reached by the Disciplinary Board." *Id.* at 455–56, 105 S.Ct. at 2774. Reliance on records, as well as the testimony of plaintiff

and plaintiff's witnesses, usually is sufficient to meet the "any evidence" standard.

Yet here, plaintiff makes two compelling arguments that implicate his due process rights. First, he asserts that he could not have been found guilty of "Escape," as defined in the Illinois Administrative Code, since he neither left nor failed to return to Stateville at any time during his confinement.

Second, plaintiff claims that he was improperly charged and found guilty of "Conspiracy to Attempt Escape." While admitting the prison's power under the Illinois Administrative Code to charge him either with Attempted Escape or Conspiracy to Escape, he notes that the Code does not provide for a charge of Conspiracy to Attempt Escape.

Plaintiff was charged with three offenses: Escape, Conspiracy to Attempt Escape and Damage/Misuse of property. The offenses are defined in the following manner:

106. Escape

Definition: Leaving or failing to return to lawful custody without authorization, including the failure to return from furlough within two hours of the designated time.

202. Damage or Misuse of Property

Definition: Destroying, damaging, removing, altering, tampering with or otherwise misusing State property or property of another person, including the obstruction of locks or security devices.

601. Aiding and Abetting, Attempt, Solicitation or Conspiracy

Definition: Aiding and abetting any person in the commission of any of these offenses; attempting to commit any of these offenses; making plans to commit any of these offenses; soliciting another to commit any of these offenses; or conspiring to commit any of these offenses shall be considered the same as the commission of the offense itself and shall carry the penalty prescribed for the underlying offense.

20 Ill. Admin.Code § 504 Table A, *amended at*, 16 Ill. Reg. ___, effective July 1, 1992.

For Escape, the maximum penalties are: one year in segregation, one year good time revocation and one year time in B or C grade confinement. For Damage/Misuse of Property, the maximum penalties are: six months in segregation, six months good time revocation and six months time in B or C grade confinement. For Aiding and Abetting, Attempt, Solicitation or Conspiracy, the maximum penalties are the same as the underlying offenses.

While the Adjustment Committee is not required by law to offer an detailed explanation of its reasons for finding plaintiff guilty, mere common sense as well as the most basic rudiments of justice require some accounting of how plaintiff could be guilty of an offense when the evidence in the record would seem to suggest that plaintiff did not meet the requirements necessary to satisfy the charge. While recent decisions have whittled down the constitutional rights enjoyed by prisoners, due process is not yet an entirely hollow phrase when applied to the interests of inmates facing disciplinary proceedings. To ensure that prison hearings do not devolve into sham proceedings, determinations of guilt must find support—at the very least—in the laws of physical possibility. Here there is ample reason to wonder how plaintiff could be guilty of Escape (a charge whose requirements it seems he did not physically meet) or Conspiracy to Attempt Escape (a charge that may not exist).

The Adjustment Committee did not specify whether plaintiff was guilty of one or both these charges. It simply checked the box on the summary form marked "guilty." The court presumes plaintiff was found guilty of more than Damage/Misuse of Property because his sentence reflected the harsher penalties available to the Adjustment Committee under the offense of Escape and Conspiracy to Attempt Escape (assuming *arguendo* that the underlying offense in this somewhat confused latter charge is Escape).

The Adjustment Committee determined that there was sufficient evidence to support its verdict of guilt. Yet it never addressed whether there was reason to sustain the initial charges brought against plaintiff in his disciplinary proceedings. It does not neces-

sarily follow that evidence adequate to establish guilt also establishes the legitimacy of the charges brought by prison officials against plaintiff. That is precisely the challenge raised by plaintiff and it is a concern that the Adjustment Committee did not consider in its summary of proceedings.

The court lacks the information necessary to decide this issue in a motion to dismiss. Defendants have not addressed plaintiff's argument that he could not have been guilty of Escape because he did not meet the elements of the offense and that he could not be guilty of Conspiracy to Attempt Escape because the charge does not exist. The court also does not find any evidence in the record that rebuts plaintiff's contention. Plaintiff has raised valid due process concerns regarding the appropriateness of the offenses of which he was found guilty. The court therefore denies defendants' motion to dismiss plaintiff's complaint relating to the sufficiency of evidence surrounding charges brought by prison officials against plaintiff for the offenses of Escape, Conspiracy to Attempt Escape and Damage/Misuse of Property.

### CONCLUSION

Defendants Allen, Peters, Springborn, and Tinsley have been voluntarily dismissed. For the reasons stated above, plaintiff's motion to dismiss defendants' motion to dismiss is denied in part and granted in part. Defendants' motion to dismiss plaintiff's complaint as it relates to defendants Godinez and Schonauer is granted. Defendants' motion to dismiss plaintiff's complaint as it relates to defendants DelPriore, Johnson and King, regarding claims of denial of due process because of failure to call witnesses, lack of participation by Adjustment Committee members and biased proceedings, is granted. Defendants' motion to dismiss plaintiff's complaint against defendants DelPriore, Johnson and King, relating to plaintiff's claims of insufficient evidence to support the charges lodged against him, is denied.

Because plaintiff's *pro se* complaint raises substantial issues regarding the latter claim, the court concludes that the interests of justice will be served by appointing counsel to represent plaintiff. Said counsel may also re-examine plaintiff's complaint regarding the extension of administrative confinement in light of the court's discussion in section I above.

Accordingly, the court *sua sponte* directs the clerk to select an attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(d) and Local General Rule 3.82.