**BOARD OF EDUCATION OF COMMUNITY HIGH SCHOOL DISTRICT NO. 218, COOK COUNTY, ILLINOIS, Plaintiff,**

v.

**The ILLINOIS STATE BOARD OF EDUCATION; Joseph A. Spagnolo, in his Official Capacity as Illinois State Superintendent of Education; The Illinois Department of Mental Health and Developmental Disabilities; Anna Patla, in her Official Capacity as Acting Director of the Department of Mental Health and Developmental Disabilities; Mr. and Mrs. B., Individually and as Parents and Next Friends of J.B., Defendants.**

No. 95 C 5705.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 7, 1996.

Jon G. Crawford and Andrew C. Eulass, Scariano, Kula, Ellch & Himes, Chtd., Chicago, IL, for plaintiff.

Robert S. Graettinger, Illinois Attorney General's Office, Chicago, IL, for defendants Illinois State Board of Education and Illinois Department of Mental Health and Developmental Disabilities.

Deborah W. Owens, Hinsdale, IL, for defendants Mr. and Mrs. B.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiff, Board of Education of Community High School District No. 218 (School District), has filed a complaint against the Illinois State Board of Education (ISBE) and the Illinois Department of Mental Health and Developmental Disabilities (DMHDD); Joseph A. Spagnolo, in his official capacity as the Illinois State Superintendent of Education, and Anna Patla, in her official capacity as the Director of the DMHDD; and Mr. and Mrs. B., the parents of J.B., alleging violations of the Individuals with Disabilities

Education Act (IDEA), 20 U.S.C. §§ 1415 and 1413(a)(13), the Rehabilitation Act, 29 U.S.C. § 794, and the School Code of Illinois, 105 ILCS 5/14–8.02(j). Defendants Mr. and Mrs. B. filed a partial motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## I.

### The IDEA

Congress enacted the IDEA, 20 U.S.C. § 1400 *et seq.*, for the purpose of ensuring

> that all children with disabilities have available to them ... a free appropriate public education that emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, to assist States and localities to provide for the education of all children with disabilities, and to assess and assure the effectiveness of efforts to educate children with disabilities.

20 U.S.C. § 1400(c). Congress set up two mechanisms to ensure that children with disabilities would receive the education guaranteed by the statute. First, the statute requires that each state must file a detailed plan for the education of disabled children in order to become eligible for federal financial assistance. 20 U.S.C. § 1413. Second, the state must create procedural safeguards to protect the rights of parents and children enumerated in the act. 20 U.S.C. § 1415(a), (b)(1). Specifically, these procedures must allow parents to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child," 20 U.S.C. § 1415(b)(1)(e), and to present such complaints in "an impartial due process hearing" before a state educational agency, 20 U.S.C. § 1415(b)(2).

The outcome of an administrative due process hearing is subject to review by the federal courts. The IDEA creates an express right of action for "[a]ny party aggrieved by the findings and decision" of an administrative hearing officer. 20 U.S.C. § 1415(e)(2). The statute authorizes the courts to review the records of the administrative hearings, to "hear additional evidence at the request of a party," and to "grant such relief as the court determines is appropriate" and is supported by a preponderance of the evidence. *Id.* The IDEA further allows the court, in its discretion, to award "reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B).

## II.

### Factual Background

This action concerns the proper educational placement for J.B., a high school student with severe psychiatric and behavioral disabilities. In December, 1992, J.B.'s parents sought an Individual Care Grant (ICG) from the state Department of Mental Health and Development Disabilities (DMHDD) in order to place their son in a twenty-four hour residential care facility. The DMHDD denied the ICG request on December 23, 1992. J.B.'s parents subsequently appealed this decision, but their appeal was denied by the DMHDD on February 5, 1993. On February 23, 1993, J.B.'s parents unilaterally placed their son in Kidspeace, a twenty-four hour residential care facility located in Pennsylvania.

On January 7, 1993, before J.B.'s parents appealed the initial DMHDD ruling, elementary School District No. 130 convened a multidisciplinary conference and determined that J.B. was not eligible for special education services under either the IDEA or Article 14 of the Illinois School Code. On the following day, J.B.'s parents requested a Level I special education hearing, which was ultimately held in April, 1993. Prior to the hearing, both J.B.'s parents and School District No. 130 filed motions to join the DMHDD in the proceedings, but these motions were denied by the Level I hearing officer. On April 30, 1993, the hearing officer ordered School District No. 130 to fund the entire cost of J.B.'s placement at Kidspeace. School District No. 130 complied with this order through the end of the 1993–1994 school year, at which time J.B. became the programmatic and financial

responsibility of plaintiff School District No. 218.

On September 12, 1994, School District No. 218 proposed an Interim Educational Plan (IEP) under which it agreed to fund J.B.'s placement at Kidspeace until it completed a full evaluation of J.B.'s educational needs. Two days later, J.B.'s parents challenged the proposed IEP by requesting another Level I due process hearing. School District No. 218 filed a motion to join both the DMHDD and the Illinois State Board of Education (ISBE) as parties to the Level I hearing, but this motion was denied by the Level I hearing officer.

On February 2, 1994, prior to the resolution of the Level I due process hearing, School District No. 218 convened a second multidisciplinary IEP conference and determined that J.B.'s educational needs could be met by a therapeutic day school rather than a twenty-four hour residential care facility. The School District invited the DMHDD to send a representative to the IEP conference on February 2, 1994, but the DMHDD elected not to participate. J.B.'s parents then challenged the outcome of this IEP conference in its pending Level I due process hearing.

On March 19, 1995, the Level I hearing officer ordered School District No. 218 to continue funding the full cost of J.B.'s placement at Kidspeace. This decision was affirmed by a Level II hearing officer on June 12, 1995. Moreover, the Level II hearing officer affirmed the lower hearing officer's decision to deny the School District's motion to join the Agency Defendants in the hearing.

Plaintiff, School District No. 218, then filed a complaint in this court against the ISBE

and the DMHDD (collectively, Agency Defendants); Joseph A. Spagnolo, in his official capacity as the Illinois State Superintendent of Education, and Anna Patla, in her official capacity as the Director of the DMHDD (collectively, Director Defendants); and Mr. and Mrs. B., the parents of J.B. (collectively, Parent Defendants). The substance of the complaint is reviewed in detail below.

On October 27, 1995, Parent Defendants filed a motion to dismiss the complaint. First, they assert that the court lacks subject matter jurisdiction over plaintiff's claims against the Director and Agency Defendants inasmuch as those defendants were not parties in the underlying administrative hearings.[1] Second, they claim that plaintiff has failed to allege any injury by Agency Defendants. Third, they argue that there is no private right of action to enforce the regulatory provisions of the IDEA. The court addresses these issues in turn.[2]

## III.

### Discussion

The court may dismiss a complaint "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In making this determination, the court "must view plaintiff's allegations in the light most favorable to the plaintiff." *Oswalt v. Godinez,* 894 F.Supp. 1181, 1183–84 (N.D.Ill.1995) (citation omitted). Consequently, "[a]ll well-pleaded facts and allegations in the plaintiff's complaint must be taken as true," and the "plaintiff is entitled to all reasonable inferences that can be drawn therefrom." *Id.* at 1184 (citation omitted).

---

1. In their answer to the complaint, Parent Defendants purported to recognize the court's jurisdiction pursuant to 28 U.S.C. § 1331, 20 U.S.C. § 1415(e)(2), 42 U.S.C. § 1983, and 105 ILCS 5/14–8.02(j). Parent–Defendants' Partial Answer to Count One, ¶ 2 (Nov. 13, 1995).

2. Parent Defendants were granted leave to file a memorandum in support of their motion to dismiss on October 27, 1995. It appears, however, that they elected to forgo this opportunity. While Local General Rule 12(P) entitles the court

to strike a motion for failure to file a supporting memorandum, the court feels compelled to devote serious consideration to the jurisdictional concerns raised here. Except in the most exceptional circumstances, parties do not enhance their prospects for success by concealing their reasoning from the court. As a rule, the court has "neither the time nor the inclination to do the parties' research for them." *Sullivan v. J.S. Sales Plumbing, Inc.,* 92 C 7393, 1994 WL 55658 at *1 (N.D.Ill., Feb. 23, 1994) (not reported F.Supp.).

## A. Subject Matter Jurisdiction

Parent Defendants assert that the court lacks jurisdiction over the subject matter of the School District's claims against Agency and Director Defendants because those defendants were not parties to the underlying administrative hearings. Plaintiff counters that the attorney for Parent Defendants is without authority to act on behalf of either Agency or Director Defendants and is therefore barred from seeking the dismissal of claims against them. To resolve this issue, the court must first decide whether an attorney may object to the court's jurisdiction over a claim that runs exclusively against a party that the attorney does not represent. Second, the court must decide whether it has subject matter jurisdiction over the School District's claims against Agency and Director Defendants even though they were not parties in the underlying due process hearings.

### i.

The federal courts are courts of limited jurisdiction, and in this capacity they exercise only such powers as derive from the Constitution and the laws of the United States. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *see also Chicago & G.T. Ry. Co. v. Wellman*, 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892) ("federal courts may exercise power only in the last resort and as a necessity"). It is axiomatic that parties cannot create federal jurisdiction over the subject matter of a claim by stipulation. *Muskegon Theatres, Inc. v. City of Muskegon*, 507 F.2d 199 (6th Cir.1974); *see also Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 384, 4 S.Ct. 510, 512–13, 28 L.Ed. 462 (1884) (judicial power "must not be exerted in a case to which it does not extend, even if both parties desire to have it exerted"). The burden of establishing federal subject matter jurisdiction rests squarely upon the party that invokes it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992).

In order to remain within the narrow boundaries of authority conferred upon them by Congress and the Constitution, the federal courts must respond to jurisdictional objections from any quarter. The federal courts have an independent obligation to ascertain the existence of their own subject matter jurisdiction in the absence of objections from the parties. *Mansfield*, 111 U.S. at 382, 4 S.Ct. at 511–12 ("court is bound to ask and answer [the question of jurisdiction] for itself, even when not otherwise suggested, and without respect to the relation of the parties before it"). If indeed the courts may raise jurisdictional objections *sua sponte*, then they may certainly entertain such objections from the parties. Indeed, Federal Rule of Civil Procedure 12(h)(3) contemplates that jurisdictional objections shall be made "by suggestion of the parties or otherwise." The attorney for Parent Defendants did not, therefore, exceed her authority by questioning the court's subject matter jurisdiction over claims running exclusively against her co-defendants.[3]

### ii.

The court now considers whether it has subject matter jurisdiction over plaintiff's claims against Agency and Director Defendants, who were not parties in the underlying IDEA hearings. Parent Defendants suggest that the IDEA limits the jurisdiction of the federal courts to claims that run between the actual parties to an underlying administrative due process hearing. Because the Agency and Director Defendants were not parties to the underlying hearings, they argue, this court has no subject matter jurisdiction over the School District's claims against them.

For reasons that will become apparent in section II.B., *infra*, the court limits it analysis here to plaintiff's claim for an order requiring the DMHDD to fund the residential portion of J.B.'s placement at Kidspeace. This claim derives from Illinois law, which allows the DMHDD to provide Individual Care Grants to fund the residential treatment of mentally ill children. *See, generally*

---

**3.** The court will disregard the stipulation of jurisdiction contained in Parent Defendants' answer to the complaint.

59 Ill.Admin.Code § 135 *et seq.* The court believes that the allocation of costs among the various state agencies here is a matter of state concern, and therefore treats this as a state law claim for purposes of its jurisdictional analysis.

The IDEA confers original jurisdiction on the federal district courts to decide appeals from administrative due process hearings conducted under 20 U.S.C. § 1415. The IDEA provides that

[a]ny party aggrieved by the findings and decision made [in an administrative hearing conducted under 20 U.S.C. § 1415(b)(2) or (c) ] shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States.

20 U.S.C. § 1415(e)(2). This section does not, however, confer original jurisdiction over state law claims against third parties who did not participate in the hearing.

The court's jurisdiction over such claims must therefore be treated as a matter of supplemental jurisdiction. In 1990, Congress authorized the federal courts to exercise supplemental jurisdiction by enacting 28 U.S.C. § 1367(a). This statute provides in relevant part that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). With this statute, Congress intended to "codify rather than to alter the [existing] judge-made principles of pendent and pendent party jurisdiction." *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993). These principles were expressed in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), where the Supreme Court held that a court may exercise supplemental jurisdiction over a state claim if the substance of the federal claim is sufficient to confer jurisdiction on the court, and if the state and federal claims derive from a common nucleus of operative fact. *Id.* at 725, 86 S.Ct. at 1138.

Inasmuch as this court has clear jurisdiction under the IDEA to review the administrative order entered against the School District, 20 U.S.C. § 1415(e)(2), it need only determine whether the School District's state claim against the DMHDD is so closely related to its federal claim that it may be said to derive from a common nucleus of operative fact and to constitute part of the same case or controversy under Article III.

Here, the court has no difficulty concluding that the School District's state law claim against the DMHDD derives from the same nucleus of operative fact as its federal IDEA claim. At root, these claims both relate to J.B.'s educational placement and the means by which it should be funded. Notably, Parent Defendants advance no argument that the state claim is factually separable from the federal claim. While they assert correctly that the court has no original jurisdiction over the School District's state law claim against the DMHDD, they ignore the possibility that the court may exercise supplemental jurisdiction over this claim. The court concludes, then, that it has supplemental jurisdiction over the School District's claim for an order requiring the DMHDD to pay for J.B.'s residential care.

The court does not, however, purport to evaluate the substance of this claim. In particular, it does not suggest that Illinois law authorizes a School District to seek a declaration that the DMHDD is liable for the cost of a student's residential care. This issue has not been treated by the parties, and the court is unwilling to address it at this time.

### B. *Standing*

Parent Defendants argue that the School District lacks standing to assert its claims against Agency and Director Defendants. The doctrine of standing derives from Article III of the United States Constitution, which limits the jurisdiction of the

**1328**

federal courts to hear only "actual cases and controversies." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) (constitutional limitation of federal court jurisdiction to actual cases and controversies is fundamental to proper role of judiciary). The Constitution imposes three standing requirements upon litigants:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560–561, 112 S.Ct. at 2136; *see also Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982).

■■■ The doctrine of mootness is closely related to the doctrine of standing. In order to have standing, a plaintiff must have "a personal interest in the case at its inception and maintain that interest throughout the litigation." *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208–09, 63 L.Ed.2d 479 (1980). Where the plaintiff loses its interest in a particular claim or the outcome of the suit, the case or claim becomes moot and the court loses its jurisdiction over it. *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir.1994). Where a defendant offers to satisfy plaintiff's entire claim, that claim becomes moot and the plaintiff "loses outright" under Federal Rule of Civil Procedure 12(b)(1). *Id.*

Parent Defendants assert that the School District has failed to allege any facts sufficient to show harm or damage to itself as a result of the action or inaction of Agency or Director Defendants. Plaintiff's failure to allege injury with respect to any claim would eliminate its standing to assert that claim and the jurisdiction of this court to review it. To determine whether in fact the School District has standing to assert its claims against Agency and Director Defendants, the court will examine its claims *ad seriatim.*

### i.

■■■ In Count I, the School District alleges that it is bound by an administrative order to provide funding for J.B.'s residential placement at Kidspeace. It further asserts that this order would not have materialized but for the fact that the administrative hearing officers misconstrued J.B.'s educational needs. Quite naturally, then, plaintiff petitions the court pursuant to 20 U.S.C. § 1415(e)(2) to reverse the order requiring it to fund J.B.'s residential placement.[4]

The School District clearly satisfies the constitutional standing requirements with respect to its first claim for relief. Plaintiff's injury consists in its ongoing obligation under an administrative order to fund the residential portion of J.B.'s placement. Under the IDEA, the court may review this order and "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2). Inasmuch as this authorizes the court to reverse the administrative order, plaintiff has standing to present this claim.

### ii.

In Count II, the School District alleges that it incurred litigation expenses as a consequence of the ISBE's failure to develop an interagency agreement in compliance with the IDEA, 20 U.S.C. § 1413(a)(13). The School District argues that the ISBE failed to meet its obligation under section 1413(a)(13)(B) to develop policies whereunder the District could obtain reimbursement from the DMHDD for the cost of J.B.'s residential care, and that this failure forced the School District to utilize the administrative hearing process. The School District therefore seeks an order mandating the ISBE to prepare an interagency agreement that conforms with

4. Plaintiff also seeks an order declaring the DMHDD to be financially responsible for the cost of J.B.'s residential placement. The court believes that this is a state law claim and declines to address it at this time. *See* discussion, *supra,* at II.A.ii.

section 1413(a)(13). It further seeks to recover reasonable attorneys' fees and costs.

■ The School District's claim for an injunction ordering the State to implement an interagency agreement has become moot. During the pendency of this motion to dismiss, the ISBE developed an agreement of precisely the type that plaintiff seeks. Joint Status Report, p. 4 (Mar. 8, 1996); *see also, Barbara Z. v. Obradovich,* 937 F.Supp. 710, 717 n. 2 (N.D.Ill.1996). It appears, then, that plaintiff no longer suffers an injury which entitles it to prospective relief. Notably, plaintiff does not raise the question of whether the new agreement meets the substantive requirements of the IDEA, and this issue is before Judge John A. Nordberg in *School District No. 201 v. ISBE,* 94 C 992 (N.D.Ill.). *See* Joint Status Report, p. 4 (Mar. 8, 1996).

■ Nor is plaintiff entitled to recover the litigation expenses that it incurred in seeking reimbursement for the cost of J.B.'s residential placement. The IDEA contains an explicit fee-shifting provision whereunder the court may, in its discretion, award "reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). Notably, however, the statute makes no analogous provision for non-parent parties. The court concludes, therefore, that the IDEA does not permit the courts to award attorneys' fees to a non-parent party that prevails in an action brought under section 1415(e).[5] *See Northfield Township H.S. Dist. 225 v. Roy H.,* 1995 WL 12249, *3 & n. 4 (N.D.Ill., Jan. 12, 1995) (IDEA "pointedly authorizes attorneys fees only for the parents of the disabled child without providing a reciprocal right for the state educational agency"). Consequently, plaintiff's alleged injury here is beyond the scope of redressability by the court. Count II is therefore properly dismissed.

iii.

In Count III, plaintiff alleges that the ISBE's failure to develop an interagency

agreement under 20 U.S.C. § 1413(a)(13) deprived J.B. of "the benefit[ ] of a[ ] program or activity receiving federal financial assistance" in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Here, the School District seeks three forms of relief. First, it requests an order requiring the DMHDD to fund the residential portion of J.B.'s care. Second, it seeks an order compelling the ISBE to develop an interagency agreement. Third, it petitions the court for reasonable attorneys' fees and costs.

The School District requests essentially the same relief under the Rehabilitation Act of 1973 as it does under the IDEA. It has already been determined that plaintiff's request for an order requiring the ISBE to develop an interagency agreement is moot. The court must now decide whether the Rehabilitation Act provides an alternative ground upon which the School District may seek to reverse a funding decision reached through an administrative hearing under the IDEA.

■ It is clear that the Rehabilitation Act of 1973, 29 U.S.C. § 794, protects the educational rights of disabled children to the same extent as the IDEA. Although the Supreme Court declared in 1984 that the IDEA was the exclusive source of educational rights and remedies for disabled children and that it consequently preempted the protections of the Rehabilitation Act, *Smith v. Robinson,* 468 U.S. 992, 1019, 104 S.Ct. 3457, 3472, 82 L.Ed.2d 746 (1984), Congress promptly amended the IDEA to reverse the effect of that decision. The IDEA now provides that

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 790 et seq.], or other Federal statutes protecting the rights of handicapped children and youth.

---

**5.** Here, the court distinguishes *Barbara Z.,* 937 F.Supp. at 718, which held that a school district may sue a state educational agency to recover funds paid to reimburse parents for litigation

costs that they incurred as prevailing parties in an administrative hearing. In that case, the court expressly precluded the school district from recovering its own litigation expenses. *Id.*

20 U.S.C. § 1415(f) (brackets in original). It is clear, then, that disabled children may assert their substantive right to a public education under either the Rehabilitation Act or the IDEA. *See Smith*, 468 U.S. at 1017, 104 S.Ct. at 3471 (substantive requirements of the IDEA and the Rehabilitation Act "have been interpreted to be strikingly similar"); *Jeremy H. v. Mt. Lebanon Sch. Dist.*, 95 F.3d 272, 278–80 (3d Cir.1996) ("There appear to be few differences, if any, between IDEA's affirmative duty and [the Rehabilitation Act's] negative prohibition"); *Urban v. Jefferson County Sch. Dist. R–1*, 89 F.3d 720, 728 (10th Cir.1996) ("regulations promulgated under [the Rehabilitation Act] generally conform to the standards established by the IDEA").

■ This does not mean, however, that the Rehabilitation Act confers substantive rights on school districts. Indeed, the first element of a *prima facie* case under the Rehabilitation Act, 29 U.S.C. § 794, is that plaintiff is a "handicapped person" within the meaning of the act. *Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2d Cir.1990). Thus, in *Barbara Z.*, the court held that a "school district may not bring a claim under the Rehabilitation Act for a violation of the IDEA." 937 F.Supp. at 721 (N.D.Ill.1996). There, as here, an Illinois school district argued that the ISBE violated section 794(a) of the Rehabilitation Act by failing to develop an interagency agreement pursuant to section 1413(a)(13) of the IDEA. *Id.* The district argued that the absence of an interagency agreement caused it to incur unnecessary litigation costs, and that such costs were recoverable under the Rehabilitation Act. *Id.* Rejecting the district's claim for attorneys' fees, the court reasoned that "[t]he Rehabilitation Act protects disabled persons, not school districts." *Id.* The court finds this reasoning to be persuasive and, for this reason, dismisses Count III.

iv.

■ In Count IV, the School District alleges that the ISBE, which is responsible for training Level I and Level II hearing officers, erroneously instructs those officers that they do not have jurisdiction over the ISBE

or the DMHDD. Consequently, the District argues, the hearing officers improperly denied the District's motion to join the ISBE and the DMHDD as defendants to the administrative hearings. Notably, plaintiff makes no specific allegation of injury in Count IV other than the denial of its motion for joinder.

Plaintiff seeks several forms of relief. First, it requests an order requiring the ISBE "to instruct and direct" hearing officers that they have the authority to join the ISBE and the DMHDD as parties to administrative proceedings. Second, it seeks an order declaring the DMHDD to be financially responsible for the residential costs of J.B.'s placement at Kidspeace, for the period beginning on September 1, 1994, and continuing through the end of his placement. Finally, it seeks an order declaring the ISBE and DMHDD to be jointly liable for the legal costs incurred by the Parent Defendants and the School Board as a result of the Level I and Level II administrative hearings.

The School District lacks standing to present the claims enumerated in Count IV because it fails to allege any injury that is "distinct and palpable" or "particular and concrete." *National Treasury Employees Union v. U.S.*, 929 F.Supp. 484, 487 (D.D.C. 1996) (citations omitted). By itself, the denial of plaintiff's joinder motion simply does not constitute "the invasion of a legally protected interest." *Id.* Indeed, plaintiff may very well have prevailed in the administrative hearings even after its joinder motion was denied. Because plaintiff has not alleged sufficient injury to support its claim for relief here, Count IV is properly dismissed.

v.

■ In Count V, the School District asserts a claim under 42 U.S.C. § 1983, alleging that it was forced to incur unnecessary litigation expenses because Agency Defendants failed to draft an interagency agreement as required by the IDEA. Once again, the School District seeks an injunction ordering the ISBE to develop an interagency agreement, a claim that the court has declared is moot. It further seeks to recover both its own attorneys' fees and the funds that it paid to J.B.'s parents for the litigation

expenses they incurred in the underlying administrative action.

Plaintiff's claim for attorneys' fees here is properly characterized as a claim for monetary damages. The court has already pointed out that the IDEA precludes the School District from recovering either its own or the Parent Defendants' litigation expenses *qua* litigation expenses. 20 U.S.C. § 1415(e)(4)(B). Here, however, plaintiff seeks to recover these expenses as *damages* that it incurred as a consequence of the State's failure to implement an interagency agreement. *See, Barbara Z.*, 937 F.Supp. at 718 (N.D.Ill.1996) (litigation expenses sought by school district from state agencies for failure to implement agreement as required by IDEA are monetary damages).

 It appears, then, that plaintiff seeks monetary compensation from the DMHDD and ISBE, both agencies of the State, for damages that it allegedly incurred as a result of those agencies' failure to draft an interagency agreement. This formulation of plaintiff's claim portends its demise, for the Eleventh Amendment immunizes the states from claims for monetary relief in federal court. *See Will v. Department of State Police*, 491 U.S. 58, 65, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). While Congress may override the states' Eleventh Amendment immunity by statute, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), it is settled that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity." *Will*, 491 U.S. at 65, 109 S.Ct. at 2309. Thus, states are not "persons" subject to money damages under section 1983. *Will*, 491 U.S. at 71, 109 S.Ct. at 2312 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").[6] The court therefore holds that plaintiff's claim against Agency Defendants for attorneys' fees is barred by the Eleventh Amendment.

---

**6.** The court distinguishes *Tonya K. v. Bd. of Ed.*, 847 F.2d 1243, 1245–1246 (7th Cir.1988), which held that the attorneys' fees provision of the IDEA, 20 U.S.C. § 1415(e)(4)(B), may be enforced against the States because fees are costs

## C. *Private Right of Action*

Finally, Parent Defendants argue that "[t]here is no private right of action to enforce these sections of the IDEA [presumably referring to the regulatory requirements of 20 U.S.C. § 1413(a)(13)] when the school could have filed a complaint with the U.S. Office of Special Education." Parent–Defendants' Partial Motion to Dismiss, ¶ 6 (Oct. 27, 1995). The court does not need to reach this issue here, however, as it has already held that plaintiff's claim for an injunction requiring the ISBE to develop an interagency agreement is moot.

ORDER: Parent Defendants' motion to dismiss Counts II through V is granted; their motion to dismiss Count I is denied.

---

rather than damages for purposes of Eleventh Amendment immunity. In this case, the School District's claim for attorneys' fees must be construed as a claim for damages rather than for costs.